**William D. FOLK, et al., Respondents,**

v.

**HOME MUTUAL INSURANCE CO., Appellant.**

**No. CX–82–754.**

Supreme Court of Minnesota.

July 15, 1983.

Roehrdanz, Bigelow, Chamberlain & Goldsmith and George M. Roehrdanz, Minneapolis, for appellant.

Jergens, Hebert, Cass, Jepsen & Doyscher and William E. Jepsen, Stillwater, for respondents.

AMDAHL, Chief Justice.

Defendant Home Mutual Insurance Company (Home) appeals from a decision in favor of plaintiffs William D. Folk and George T. Folk in this suit to declare the existence of automobile liability insurance coverage. The dispositive question on appeal is whether the issue of an implied contract of insurance was raised by the pleadings or litigated by consent. Our review of the record persuades us that confusion in the presentation of the matter to the trial court requires reversal and remand with leave to the plaintiffs to move to amend their complaint.

On March 30, 1980, plaintiff William D. Folk and his passenger were seriously injured when a 1966 Oldsmobile owned and driven by William Folk was involved in a one-car accident. The passenger sought damages due to the alleged negligence of William, and Folk tendered defense of the claim to Home under the liability portion of a policy issued to his father, plaintiff George T. Folk, with whom he resided at the time of the mishap. Home denied coverage on the ground that the only two vehicles listed on the declarations were a 1976 Buick and a 1974 Chevrolet, that the 1966 Oldsmobile did not qualify as an "insured car" since it was neither a replacement vehicle nor a newly acquired one, and

that there was an express exclusion of coverage for "[b]odily injury * * * arising out of the ownership, maintenance or use of any vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or a relative."

The Folks commenced this suit to obtain a declaration of their rights under the insurance contract. The complaint referred to the policy specifically by its number. George Folk was the only witness at trial. He testified that William had been interested in automobiles for a number of years prior to the accident. William purchased used cars in need of repair, fixed them, drove them until they malfunctioned again and then stored them in the family backyard to await further repair. When these vehicles were operational they were listed on George Folk's policy with Home. Additions or deletions were accomplished by telephone. Shortly before the accident there were four disabled automobiles in the Folks' backyard, none of which was specified on the insurance policy. William resurrected one of them, the 1966 Oldsmobile, on a Friday evening and was involved in an accident with it the following Sunday afternoon before the insurance agent had been notified that it had been returned to use.

Once these basic facts were established, plaintiffs' counsel inquired whether George Folk had had occasion to have insurance backdated. Defense counsel objected on the ground that the written contract would speak for itself. The trial court, aware that insurance coverage can be bound over the telephone, permitted development of the backdating evidence, reasoning that it would be relevant if tied to the 1966 Oldsmobile in particular. Plaintiffs then introduced eight documents relating to the policy showing the course of George Folk's adding vehicles to, and removing them from, coverage. The notices generally bore issue dates later than their effective dates and it was George Folk's recollection that the effective dates were the dates the vehicles were put into, or taken out of, use by his family. He testified that he understood that he had 30 days to notify his insurance agent of a vehicle change—whether purchase, replacement or return to use—and that coverage would exist from the date the automobile was put into service. In their post-trial memorandum plaintiffs argued not only that they were entitled to coverage under the policy terms but, alternatively, that the evidence of backdating established an implied contract. The trial judge found coverage on the latter theory.

It is fundamental that a party must have notice of a claim against him and an opportunity to oppose it before a binding adverse judgment may be rendered. *See, e.g., Truesdale v. Friedman,* 270 Minn. 109, 124–26, 132 N.W.2d 854, 864–65 (1965); *cf.* Minn.R.Civ.P. 15.02 (permitting amendment of pleadings where "issues not raised by the pleadings are tried by express or implied consent of the parties * * * "). A trial court, therefore, is required to base relief on issues either raised by the pleadings or litigated by consent. We find no language in the complaint suggesting an implied contract theory and the record does not indicate that Home expressly consented to submission of such a question to the trial court. Thus, plaintiffs are entitled to prevail only if consent may be implied from Home's conduct.

We discussed the considerations relevant to ascertaining implied consent in *Roberge v. Cambridge Cooperative Creamery Co.,* 243 Minn. 230, 67 N.W.2d 400 (1954). Consent is commonly implied either where a party fails to object to evidence inadmissible with respect to issues raised by the pleadings or where he puts in his own evidence relating to nonpleaded issues. There is a presumption that evidence is offered and received with reference to issues framed by the pleadings and consent is not implied where evidence is actually pertinent to such issues regardless of its other probative value. Consent is not implied by mere failure to claim surprise or request a continuance. In *Roberge* we cautioned that "[l]itigation by consent is not to be applied artificially, but rather is to be implied where the novelty of the issues sought to be raised is reasonably apparent and intent to

try these issues is clearly indicated by failure to object or otherwise." 243 Minn. at 235, 67 N.W.2d at 404.

 Our review of the present record reveals that plaintiffs and Home each contributed to the confusion surrounding the nature of the claim before the trial court. Under such circumstances we are unable to find that Home should have been aware of the issue during trial or that it clearly consented to litigate it. Home objected to the questions regarding backdating of insurance at its first opportunity and when the trial court admitted the testimony on a mistaken assumption of what plaintiffs sought to prove, they did nothing to clarify the situation or correct any misconception. The evidence would have been appropriate had it developed as the trial court anticipated. Furthermore, backdating evidence was pertinent to the express contract theory. Under the policy terms newly acquired vehicles and replacement ones were automatically covered from the date of use. Thus evidence that other automobiles had been added to the policy with coverage backdated to the date of use after having been stored in the backyard would give rise to an inference that the intended meaning of the policy terms was that the 1966 Oldsmobile was an "insured car." This understanding of plaintiffs' argument accounts for Home's extensive cross-examination of George Folk. Furthermore, Home's effort to secure the insurance agent's testimony, but failure to request a continuance when it was unable to do so, is not inconsistent with such an interpretation because the agent's testimony would have been relevant but not crucial in light of Home's strong legal arguments on the express contract claim. Finally, plaintiffs' first candid statement that they were relying in part on an implied contract theory came after trial in a memorandum. We are not persuaded that Home's response to the contentions in a supplemental brief is sufficient to imply that consent existed at the time of trial.

Usually when a decision rests on issues not fairly litigated outright, reversal is appropriate. However, in this case the fact that both parties participated in the confusion leads us to conclude that remanding the matter to the trial court to permit it to entertain a motion to amend the complaint is more conducive to justice. Home has represented that it will consent to an amendment adding the implied contract theory, but the trial court is nonetheless empowered to exercise its own discretion.

Reversed and remanded.