*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1621**

Commonwealth Land Title Insurance Company,
Respondent,

vs.

Historic Ivy Tower, LLC, et al.,
Appellants.

**Filed August 4, 2014
Affirmed in part, reversed in part, and remanded
Schellhas, Judge**

Hennepin County District Court
File No. 27-CV-11-3713

Brian M. Sund, Ryan R. Dreyer, Eric G. Nasstrom, Stacy L. Kabele, Jeffrey R. Underhill, Morrison Sund PLLC, Minnetonka, Minnesota (for respondent)

David F. Herr, Emma Greenman, Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota; and

Stephen J. Foley, Thomas W. Pahl, Aaron M. Ninnemann, Foley & Mansfield, PLLP, Minneapolis, Minnesota (for appellants)

Considered and decided by Schellhas, Presiding Judge; Halbrooks, Judge; and Toussaint, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellants argue that the district court erred by (1) granting respondent summary judgment on its breach-of-indemnity claim, (2) denying appellants' motion to dismiss respondent's fraud claim with prejudice, and (3) denying appellants' request for apportionment of damages based on two indemnity agreements. On cross-appeal, respondent argues that the district court miscalculated prejudgment interest. We affirm in part, reverse in part, and remand for a recalculation of prejudgment interest.

**FACTS**

This dispute arises out of the development of a 136-room hotel (Ivy Tower hotel) and 92 residential condominiums (Ivy Tower residence) in Minneapolis (collectively Ivy project). Appellant Jeffrey Laux was the chief manager of appellants Historic Ivy Tower LLC; Ivy Tower Holdings LLC; Ivy Tower Garage LLC; Historic Ivy Hotel LLC; Ivy Tower Development LLC; and Ivy Tower Minneapolis LLC (Ivy entities). In December 2005, respondent Commonwealth Land Title Insurance Company closed construction loans totaling about $69,000,000 to Ivy Tower Development, Ivy Tower Minneapolis, and Ivy Tower Holdings from Dougherty Funding LLC. Commonwealth issued a policy of title insurance to Dougherty, and Ivy Tower Development agreed to indemnify Commonwealth against loss arising from mechanics' liens or claims in connection with work done or alleged to be done or materials provided or alleged to be provided to the Ivy project. Ivy Tower Development did "not indemnify for any of the above caused by the intentional or negligent acts or omissions of Commonwealth." Commonwealth agreed

2

to act as the disbursing agent for Dougherty and signed two disbursing agreements—one with Ivy Tower Holding and Dougherty for the Ivy Tower hotel and one with Ivy Tower Minneapolis and Dougherty for the Ivy Tower residence.

In 2008, Commonwealth issued four additional title policies, insuring Dougherty against loss or damage incurred because of "[t]he lack of priority of the lien of the Insured Mortgage upon the Title" for listed reasons. Appellants Gary Benson, Laux, and Ivy entities (Ivy parties) gave Commonwealth an indemnity bond in connection with title policies in which Commonwealth insured loan amounts of $38,195,000 and $30,830,000 "plus any additional amounts of owner's and loan policies issued by [Commonwealth], as to condominium units." The 2008 indemnity bond covered Commonwealth's expenses incurred by reason of the omission or deletion of 11 mechanics' liens that totaled more than $2,500,000 million and "any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished imposed by law."

In 2010, Commonwealth sued Ivy parties for breach of the 2005 indemnification agreement and the 2008 indemnification bond, and for fraud, among other things. In response, Ivy parties affirmatively alleged that Commonwealth's alleged damages were caused by the negligence of it or other parties and counterclaimed that Commonwealth negligently "advance[ed] funds without performing its duties and obligations under the Disbursing Agreements," thereby breaching its duty "in administering the funding of the disbursements of the loan and insuring title to the Property." The district court appointed a special master to resolve discovery disputes and hear non-dispositive motions; set November 15, 2011, as a deadline for discovery, subsequently extended to January 15,

3

2012; set December 15, 2011, as a deadline for dispositive and non-dispositive motions with a hearing deadline of January 16, 2012, subsequently extended to January 16, 2012, and February 15, 2012, respectively; and set May 7, 2012, as a trial date, subsequently extended to a range of dates between February 12, 2013, and March 1, 2013.

In March 2012, both Commonwealth and Ivy parties moved for partial summary judgment. Commonwealth sought (1) judgment on Ivy parties' liability for breach of the 2005 indemnity agreement and the 2008 indemnity bond and (2) dismissal of Ivy parties' counterclaims, intending to try the issue of damages and its fraud claim. Ivy parties opposed Commonwealth's motion, arguing that the 2008 indemnity bond was ambiguous and bound Laux and Benson to pay "only a pro-rata share of the condominiums that were actually closed, and not on the entire project itself." Ivy parties moved for dismissal of Commonwealth's fraud claim.[1]

---

[1] By apparent agreement of the parties, the special master heard the parties' dispositive motions and denied Commonwealth summary judgment on its breach-of-indemnity claim, granted Commonwealth summary judgment on Ivy parties' counterclaims, and denied Ivy parties summary judgment on Commonwealth's fraud claim. The parties moved the district court to modify the special master's order. Commonwealth argued, as to its breach-of-indemnity claim, that no genuine issue of material fact existed about whether its negligence precluded indemnification from Ivy parties, and that Minnesota does not recognize a cause of action for negligent breach of contract. Ivy parties affirmatively alleged negligence by Commonwealth regarding Commonwealth's duties that allegedly were independent of the disbursing agreements. Ivy parties objected to the special master's dismissal of some of their counterclaims and refusal to dismiss Commonwealth's fraud claim. Ivy parties' argued that Commonwealth breached its duty as an escrow holder under the disbursing agreements and breached its duty as a title insurer "to obtain a subordination (but not waiver) of any mechanic's liens by Bor-Son and all then-known future subcontractors to the lien of the Dougherty mortgage" when it knew of "a substantial likelihood for a priority argument." Commonwealth objected to Ivy parties' newly raised negligence theories. Ivy parties responded that Commonwealth was under a duty "that the law imposes anywhere on any actor . . . . It's either a

4

The district court granted Commonwealth summary judgment on its breach-of-indemnity claim, concluding that Ivy parties breached the 2008 indemnity bond by failing to indemnify Commonwealth or satisfy the mechanics' liens; dismissed Ivy parties' counterclaims; denied Ivy parties' partial-summary-judgment motion, rejecting their argument that the 2008 indemnity bond was ambiguous; declined to consider Ivy parties' newly raised negligence theories; and denied Ivy parties' motion to dismiss Commonwealth's fraud claim, reserving for trial the issue of damages on the breach-of-indemnity claim and Commonwealth's fraud claim.

On February 25, 2013, before the commencement of trial, subject to their arguments that the district court previously rejected, Ivy parties conceded that Commonwealth's breach-of-indemnity damages were $6,334,576.79, and Commonwealth agreed that it would pursue its fraud claim against only Benson. Ivy parties moved to dismiss the fraud claim *with prejudice* under the election-of-remedies doctrine. Commonwealth objected, arguing that if the court dismissed the fraud claim *with prejudice* and an appellate court remanded the judgment on its breach-of-indemnity claim, Commonwealth would be unable to prove separate damages for each claim. Commonwealth proposed that the court direct entry of judgment in the amount of $6,334,576.79 under Minn. R. Civ. P. 54.02 and hold the fraud claim against Benson "in abeyance." Commonwealth's counsel stated, "Just to be clear, so there is no funny stuff here, on the record, I will be bringing a Motion to Dismiss Without Prejudice [the fraud

contractual duty or if the contract imposes duty but it doesn't define how, when, or where, then the law imposes an implied covenant to act in good faith and to deal fairly."

5

claim] in the future." And Ivy parties replied, "That's fine." The court agreed to hold the fraud claim against Benson in abeyance, denied Ivy parties' request to reopen the record to hear their motion, and ordered entry of judgment in the amount of $6,334,576.79 against Ivy parties jointly and severally. The district court administrator entered judgment on April 4.[2]

Commonwealth moved to amend the judgment to include prejudgment interest in the amount of $2,163,068.16, accruing from July 13, 2009, when Commonwealth claimed to have provided Ivy parties written notice of its claim. Over Ivy parties' objection, the district court awarded Commonwealth $593,263 in prejudgment interest, applying "the [common-law] ascertainability rule." Upon Commonwealth's request, the district court subsequently dismissed Commonwealth's fraud claim against Benson without prejudice, and the district court administrator entered judgment on August 12, 2013.

This appeal and cross-appeal follow.

## D E C I S I O N

### I. The district court did not err by granting Commonwealth summary judgment on its breach-of-indemnity claim.

Appellate courts "review de novo a district court's grant of summary judgment. We view the evidence in the light most favorable to the party against whom summary judgment was granted to determine whether there are any genuine issues of material fact

---

[2] On May 24, 2013, Ivy parties noticed an appeal from the April 4, 2013 judgment, but this court dismissed the appeal because Commonwealth's motion to amend the judgment to include prejudgment interest was pending.

and whether the district court correctly applied the law." *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014). "The moving party has the burden of showing an absence of factual issues before summary judgment can be granted." *Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 191 (Minn. 2005).

The 2005 indemnity agreement relieved Ivy Tower Development of its duty to indemnify Commonwealth for specified expenses incurred by Commonwealth due to its "intentional or negligent acts or omissions." In answering Commonwealth's complaint, Ivy parties asserted affirmative defenses and counterclaims. They claimed that Commonwealth negligently "advance[d] funds without performing its duties and obligations *under the Disbursing Agreements*," thereby breaching its duty "in administering the funding of the disbursements of the loan and insuring title to the Property." (Emphasis added.) Ivy parties are precluded from recovering on that basis because "negligent breach of contract[ is] a cause of action not recognized in this state." *Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 424 (Minn. 1987) (citing *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983)); *see also Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) ("[W]hen a contract provides the only source of duties between the parties, Minnesota law does not permit the breach of those duties to support a cause of action in negligence." (quotation omitted) (citing *Lesmeister*, 330 N.W.2d at 102)); *Wild v. Rarig*, 302 Minn. 419, 440, 234 N.W.2d 775, 789 (1975) ("[W]hen a plaintiff seeks to recover damages for an alleged breach of contract he is limited to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort.").

Ivy parties invite this court to construe their negligence affirmative defense to include a claim that Commonwealth breached duties "imposed by standard practices in the title insurance industry." They argue that the district court erred by granting Commonwealth summary judgment on its breach-of-indemnity claim because genuine issues of material fact exist as to whether Commonwealth engaged in "negligent underwriting" and, if so, whether that negligence precludes Commonwealth from recovering from Ivy parties. We decline Ivy parties' invitation.

"Minnesota is a notice-pleading state that does not require absolute specificity in pleading, but rather requires only information sufficient to fairly notify the opposing party of the claim against it." *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 917–18 (Minn. 2012); *see also Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh*, 658 N.W.2d 522, 535 (Minn. 2003) ("[C]ourts are to construe pleadings liberally."). Parties need not specially plead "specific acts of negligence," *Lines v. Ryan*, 272 N.W.2d 896, 901 n.3 (Minn. 1978), and "the word 'negligently' . . . is generally sufficient, without stating the particular circumstances or details which go to make up the negligence complained of," *Rogers v. Truesdale*, 57 Minn. 126, 128, 58 N.W. 688, 689 (1894). *See also Goeb v. Tharaldson*, 615 N.W.2d 800, 818 (Minn. 2000) ("[T]he pleading of broad, general statements that may be conclusory is permitted, and pleadings need not allege facts to support every element of a cause of action."). But, "where a pleading alleges negligence in general terms, followed by specifications as to what the negligence consists of, the specifications control over the general allegation." *Baufield v. Warburton*, 181 Minn. 506, 507, 233 N.W. 237, 238 (1930).

The district court "is required to base relief on issues either raised by the pleadings or litigated by consent" because "[i]t is fundamental that a party must have notice of a claim against him and an opportunity to oppose it before a binding adverse judgment may be rendered." *Folk v. Home Mut. Ins. Co.*, 336 N.W.2d 265, 267 (Minn. 1983). Here, Ivy parties neither pleaded that Commonwealth engaged in "negligent underwriting" nor pleaded that Commonwealth committed negligence based on duties arising independent of the disbursing agreements. And Ivy parties limited their negligence counterclaim to breach of duties arising from the disbursing agreements, pleading that "Commonwealth breached its duty of care by advancing funds without performing its duties and obligations *under the Disbursing Agreements*." (Emphasis added.) In their answer, Ivy parties denied liability under the 2008 indemnity bond for reasons including their "counterclaims." They argue on appeal that the district court erred by dismissing their "Counterclaim for Negligence," also arguing that the district court was obligated to provide them a trial on the issue of Commonwealth's negligence. We construe Ivy parties' negligence affirmative defense in light of their negligence counterclaim because they premised their defense and counterclaim on the same theory. *Cf.* Minn. R. Civ. P. 8.03 ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, on such terms as justice may require, shall treat the pleading as if there had been a proper designation."); *Hardin Cnty. Sav. Bank v. Hous. & Redevelopment Auth.*, 821 N.W.2d 184, 192 (Minn. 2012) ("Our obligation is to *review the complaint as a whole . . . .*" (quotation omitted)).

9

Before objecting to the special master's order on August 29, 2012,[3] Ivy parties never provided the district court or Commonwealth notice of their claim of negligence based on duties arising independent of the disbursing agreements. Notably, in their memorandum opposing Commonwealth's summary-judgment motion before the special master, Ivy parties argued that "Commonwealth's Breach of the Disbursing Agreements Precludes its Claim Under the Indemnity Agreement and Indemnity Bond."

Minnesota Rule of Civil Procedure 15.01 permitted Ivy parties to amend their pleadings by leave of court. "[A] party that 'fails to take advantage of this procedure . . . is bound by the pleadings unless the other issues are litigated by consent.'" *Rios v. Jennie-O Turkey Store, Inc.*, 793 N.W.2d 309, 317 (Minn. App. 2011) (quoting *Roberge v. Cambridge Co-op. Creamery Co.*, 243 Minn. 230, 234, 67 N.W.2d 400, 403 (1954)). Here, the parties did not litigate Ivy parties' new theories by consent. We conclude that the district court did not err by declining to consider Ivy parties' new negligence theories and therefore affirm the court's grant of summary judgment to Commonwealth on its breach-of-indemnity claim.

---

[3] This date was more than seven months after the January 16, 2012 deadline for dispositive motions and more than six months after the February 15, 2012 hearing deadline for those motions.

**II. Ivy parties waived any challenge to the district court's February 25, 2013 denial of their motion to dismiss Commonwealth's fraud claim against Benson with prejudice by not objecting to the district court's July 2013 dismissal of the claim without prejudice.**

Ivy parties argue that the district court erred by denying their oral motion on February 25, 2013, to dismiss Commonwealth's fraud claim against Benson *with prejudice*. Commonwealth argues that Ivy parties waived this argument.

On July 9, 2013, Commonwealth sent the district court a letter in response to what it described as the district court's suggestion that the parties stipulate to "what happened between them [on the record on February 25, 2013,] that was read into the record," stating,

> In an attempt to alleviate any disagreement between [counsel for Ivy parties] and myself as to what was stipulated to and, more importantly, so as to completely eliminate any grounds for the appellate court to reject the ripeness of the appeal at this time, Commonwealth has authorized me to dismiss its fraud claim *without prejudice*. Accordingly, if the Court is so inclined, Commonwealth requests that the Court dismiss the fraud claim altogether *without prejudice* to eliminate any jurisdiction issues over pending claims that troubled the appellate court.
>
> . . . . I have attached a proposed order for the Court to sign.

(Emphasis added.) On July 10, Ivy parties sent the court an e-mail, stating, "Please be advised that we have received [Commonwealth]'s letter of July 9, 2013 requesting the Court dismiss the remaining fraud claim against Mr. Benson without prejudice. *We have no objection to this request, and no objection to the proposed order submitted by [Commonwealth]*." (Emphasis added.) The district court then dismissed the fraud claim against Benson without prejudice.

11

Voluntary-dismissal motions are governed by Minn. R. Civ. P. 41, and, generally, "[t]his court will not reverse a district court's decision on a rule 41 motion unless the district court abuses its discretion." *Butts ex rel. Iverson v. Evangelical Lutheran Good Samaritan Soc'y*, 802 N.W.2d 839, 841 (Minn. App. 2011), *review denied* (Minn. Oct. 26, 2011). The district court may dismiss a plaintiff's claim under rule 41.01(b) "upon order of the court and upon such terms and conditions as the court deems proper."

When Ivy parties expressed no objection to Commonwealth's July 2013 request for dismissal of its fraud claim against Benson without prejudice, they acquiesced to the district court losing its jurisdiction to enter judgment on the merits of the fraud claim because "voluntary dismissal . . . ends the case and ousts the court of jurisdiction thereafter to enter judgment on the merits." *Application of Mitchell*, 216 Minn. 368, 376, 13 N.W.2d 20, 25 (1944); *cf. DeMars v. Robinson King Floors, Inc.*, 256 N.W.2d 501, 506 (Minn. 1977) (referring to "the court of appeals [as] los[ing] jurisdiction by virtue of a voluntary dismissal").

We conclude that Ivy parties waived any challenge to the district court's February 25, 2013 denial of their request to dismiss the fraud claim against Benson with prejudice by not objecting to the court's July 2013 dismissal of the claim without prejudice.

**III.** **The district court did not abuse its discretion by declining to consider Ivy parties' trigger-and-allocation argument and by denying Ivy parties' request to present trigger-and-allocation evidence and argument to the jury.**

"The court has broad discretion to impose deadlines to manage its calendar." *TC/Am. Monorail, Inc. v. Custom Conveyor Corp.*, 840 N.W.2d 414, 418 (Minn. 2013). In this case, the district court set January 16, 2012, as the deadline for dispositive- and non-dispositive motions and ordered that such motions be heard by February 15, 2012.

When opposing Commonwealth's summary-judgment motion on its breach-of-indemnity claim, Ivy parties argued that the 2008 indemnity bond was ambiguous and that Laux's and Benson's indemnity liability was limited to "a pro-rata share of the condominiums that were actually closed, and not on the entire project itself." The district court rejected their arguments. In a trial memorandum filed on February 22, 2013, three days before trial, Ivy parties argued, *for the first time*, that only Ivy Tower Development was liable to pay indemnity damages because only coverage under the 2006 title-insurance policy was triggered and, even if coverage under the 2008 title-insurance policies was triggered, "all losses must be allocated pro-rata" (trigger-and-allocation argument).

On February 25, 2013, when the parties appeared for trial and Commonwealth agreed that it would pursue its fraud claim only against Benson, Ivy parties, on the basis of their trigger-and-allocation argument, moved to dismiss Commonwealth's damage claim as a matter of law against all Ivy parties except Ivy Tower Development. Alternatively, Ivy parties requested that the district court permit them to argue at trial that

13

the events triggering coverage under the polices were continuous and for the court to allocate indemnification liability after trial. Commonwealth objected on the bases that Ivy parties did not plead or previously raise their trigger-and-allocation theory as an affirmative defense. Ivy parties maintained that "[t]here is no affirmative disclosure requirement under the Minnesota Rules of Civil Procedure. They didn't ask me. I don't have to tell them," and contended that they pleaded the argument by denying that they owed Commonwealth any money. The district court declined to address the merits of Ivy parties' trigger-and-allocation argument, stating, "This issue has never been raised before. . . . There is no motion pending before the Court. There was no motion noticed. There was no motion—no affidavit submitted with these documents. It was not properly before the Court, even though I listened to it all morning."

Before Commonwealth submitted its proposed order to the district court, Ivy parties submitted affidavits and a memorandum to the court, noting that they "object[ed] to the proposed damage amounts adjudged against them because Commonwealth has not proven any facts that would as a matter of law establish the entire amount of the incurred loss is chargeable solely to the 2008 policies." They also argued that "there cannot be 'joint and several' liability of each Indemnitor, as only Ivy Tower is contractually obligated to indemnify losses under the 2006 Policy." By letter, they asked the court to reopen the record to consider their evidence and memorandum and to "direct the parties to file cross-motions for summary judgment on the issues of trigger and allocation." Commonwealth submitted its proposed order, which provided for the entry of judgment in the amount of $6,334,576.79 against Ivy parties jointly and severally, and asked the

14

court to strike Ivy parties' memorandum and an exhibit attached to one of their supporting affidavits, noting that the trial record closed on February 25, 2013.

The district court denied Ivy parties' trigger-and-allocation requests as untimely. The court reasoned that extensive discovery occurred; the parties filed multiple motions, including summary-judgment motions; the dispositive-motions deadline was January 16, 2012, to be heard no later than February 15, 2012; Ivy parties filed their trigger-and-allocation memorandum on February 22, 2013, after receiving a four-month continuance; and Commonwealth lacked notice of the issue because Ivy parties did not plead it or mention it in their interrogatory answers.

Ivy parties argue that the district court erred by denying their trigger-and-allocation requests and ordering that Ivy parties are jointly and severally liable on the judgment in favor of Commonwealth. Ivy parties argue as follows:

> To properly allocate damages between the 2005 Indemnity Agreement indemnified by [Ivy Tower Development], and the 2008 Indemnity Bond indemnified by the Ivy Parties, the district court should have determined which of Commonwealth's title insurance policies was triggered by the mechanic's lien claims. If and only then could the district court properly determine which indemnity agreement, if any, was obligated to cover Commonwealth's losses.

They also argue that the court's February 25 ruling "improperly denied the Ivy Parties the opportunity to proceed to trial on issues of Commonwealth's alleged breach of contract damages under either the 2005 Indemnity Agreement or 2008 Indemnity Bond." We are not persuaded.

15

Appellate courts review for an abuse of discretion a district court's "evidentiary rulings." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 164 (Minn. 2012). "Questions of law are generally not to be decided by a jury," *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 820 (Minn. 2006), and the district court errs by submitting a legal question to a jury, *see, e.g.*, *Glorvigen*, 816 N.W.2d at 582 ("[W]hether there exists a duty is a legal issue for court resolution. If no duty exists, it is error for the district court to submit the negligence claim to the jury." (quotation omitted)). "[T]he timing of an underlying plaintiff's injury is a question of fact." *In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 415 (Minn. 2003). But "[t]he interpretation of an insurance policy, including the question of whether a legal duty to defend or indemnify arises, is one of law." *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (quotation omitted).

We note that Ivy parties' reliance on the 2005 indemnity agreement and 2006 title policy directly contradicts the statement in their answer that "the Indemnification Agreement signed prior to 2008 is *null and void*" and the 2006 policy "was rendered *null and void* in October 2008, and is *no longer of any force or effect*." (Emphasis added.) Regardless, the damages issue that the district court reserved for trial was limited to Ivy parties' indemnity obligation under the 2008 indemnity bond, not the 2005 indemnity agreement. The district court granted summary judgment to Commonwealth on its breach-of-indemnity claim because Ivy parties "breached the 2008 Bond" by "not satisfy[ing] the mechanics' liens or indemnify[ing] [Commonwealth] for any of its losses incurred as a result of defending against the mechanics' liens on the project."

16

We conclude that the district court acted within its discretion by denying Ivy parties' trigger-and-allocation motion made on the eve of trial and in violation of Minn. Gen. R. Prac. 115.03(a)–(b). *See Maudsley v. Pederson*, 676 N.W.2d 8, 12 (Minn. App. 2004) ("[W]hether or not to enforce its own scheduling order is clearly within the district court's discretion."); *see also Rhee v. Golden Home Builders, Inc.*, 617 N.W.2d 618, 621 (Minn. App. 2000) ("Rhees were unfairly prejudiced by the court's failure to enforce the [general] rules [of practice] under these circumstances."). We further conclude that the district court did not abuse its discretion by declining to permit Ivy parties to present arguments as to that issue to the jury.

**IV.** **The district court erred by applying the common-law readily ascertainable rule to determine the accrual dates of Commonwealth's prejudgment interest instead of applying Minn. Stat. § 549.09, subd. 1(b) (2012), the prejudgment-interest statute.**

When Commonwealth moved to amend the judgment to include prejudgment interest in the amount of $2,163,068.16, accruing from July 13, 2009, the date on which Commonwealth claimed to have provided Ivy parties written notice of its claim, Ivy parties objected, arguing that "Commonwealth fail[ed] to prove when its alleged damages actually accrued." The district court did not accept July 13, 2009, as the interest-accrual date. Applying the common-law ascertainability rule, the court selected various interest-accrual dates to calculate interest and awarded Commonwealth $593,263 in prejudgment interest. Commonwealth argues that the district court erred by applying the common-law ascertainability rule. The availability of prejudgment interest is a legal issue that we review de novo." *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 390 (Minn. App. 2004),

*review denied* (Minn. Aug. 25, 2004); *see also White v. City of Elk River*, 840 N.W.2d 43, 52 (Minn. 2013) ("Statutory interpretation presents a question of law, which we review de novo.").

Minnesota statutes section 549.09, subdivision 1(b), includes no readily ascertainable requirement. The statute provides that, generally, "[e]xcept as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest on pecuniary damages shall be computed as provided in paragraph (c) from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first."

> Before the 1984 amendment of section 549.09 "[a] plaintiff [was] entitled to prejudgment interest on a final judgment where the damages claim [was] liquidated, or, if unliquidated, where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion (as in actions for personal injury or injury to reputation)."

*Skifstrom v. City of Coon Rapids*, 524 N.W.2d 294, 296 (Minn. App. 1994) (quoting *Summit Court, Inc. v. N. States Power*, 354 N.W.2d 13, 16 (Minn. 1984) (other quotation omitted)), *review dismissed* (Minn. Oct. 25, 1995). "In 1984, . . . section 549.09 was amended to allow pre-verdict interest irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable." *Lienhard v. State*, 431 N.W.2d 861, 865 (Minn. 1988); *see Skifstrom*, 524 N.W.2d at 296–97 (following *Lienhard*); *see also Myers v. Hearth Techs., Inc.*, 621 N.W.2d 787, 794 (Minn. App. 2001) (following *Lienhard* and *Skifstrom*), *review denied* (Minn. Mar. 13, 2001); *Cox v. Crown CoCo, Inc.*,

18

544 N.W.2d 490, 500–01 (Minn. App. 1996) (same). And the supreme court clearly stated in *Schwickert, Inc. v. Winnebago Seniors, Ltd.* that "[t]he prejudgment interest statute does not require that the damages be readily ascertainable." 680 N.W.2d 79, 88 (Minn. 2004).

Ivy parties argue that Commonwealth is not entitled to prejudgment interest on damages that it had not yet incurred. We disagree because section 549.09, subdivision 1(b), includes no incurrence requirement, except "as to special damages." We therefore reverse the June 26, 2013 prejudgment-interest award and remand for the district court to recalculate prejudgment interest based on section 549.09, subdivision 1(b).

**Affirmed in part, reversed in part, and remanded.**