*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1796**

In re the Guardianship/Conservatorship of:
Lorraine Helen Schmidt

**Filed August 29, 2016
Affirmed
Bratvold, Judge**

Cass County District Court
File No. 11-PR-11-1011

Edward R. Shaw, Edward Shaw Law Office, Brainerd, Minnesota (for appellant)

John E. Valen, Valen Law, Walker, Minnesota (for respondent George Arts)

Christine M. Lennartson, Cannon Falls, Minnesota (pro se respondent)

William W. Schmidt, South St. Paul, Minnesota (pro se respondent)

Considered and decided by Bratvold, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

Appellant Rebecca Anderson appeals from the denial of a new-trial motion in her mother's guardianship case, arguing that the district court abused its discretion by allowing the parties to litigate issues not raised by the pleadings or tried by consent. Because we

conclude that the issues were litigated with proper notice and by consent, we affirm the district court's denial of Anderson's new-trial motion.

## FACTS

This case involves the guardianship/conservatorship of Lorraine Schmidt. Schmidt was married to Wallace Louis Schmidt. Lorraine and Wallace have six children: Rebecca Anderson, Linda Johnson, Christine Lennartson, Kay Ann Schmidt, Wallace William Schmidt, and Susan Schmidt.[1] Before the district court appointed a guardian, Rebecca held the power of attorney for Lorraine and lived with and cared for her parents before 2012.

Lorraine has dementia. In May 2011, Wallace William Schmidt, Lorraine's son, filed the underlying petition for appointment of a guardian/conservator. The district court granted William's petition on July 5, 2011, and George Arts accepted an appointment as Lorraine's guardian/conservator.[2] In an addendum to its order granting guardianship, the district court found that Rebecca had been "coercive, controlling, and very overbearing." The district court also found that Lorraine, who suffers from severe anxiety and depression, "feels over-powered and helpless when dealing with Rebecca." Additionally, the district court found that Rebecca "has unduly influenced" Lorraine, that she has "isolated [her] from her other children," and that she "used her power of attorney to take control of [Lorraine's] assets and divert [Lorraine's] assets to her own use." Specifically, the district court found that Rebecca convinced Lorraine "to sign documents stating [that] all the

---

[1]  In this case, multiple people have the last name "Schmidt." To avoid confusion, this opinion will refer to all family members by their first names. Wallace William Schmidt will be referred to as "William."
[2]  Arts was also the guardian for Wallace Louis Schmidt, until he died in March 2014.

2

money she has diverted for her own use was gifted to her" and convinced Lorraine to sign a new will "that she did not participate in creating" by telling her that her "will was old and no good anymore." The district court also found that

> [Rebecca] had [Lorraine] and [Lorraine]'s husband sign over the deed to their only homestead when they were not of sound mind, and after a period of approximately ten years, she came upon the deed and filed it. This was done secretly and unbeknownst to [Lorraine] and her husband or to any of her siblings.

No party appealed from the district court's decision.

Lorraine moved into a nursing home in 2012. Wallace died in March 2014.

In October 2014, Arts wrote Rebecca a letter in his capacity as Lorraine's conservator. Arts's letter stated that the home owned by Lorraine and her late husband now belonged to Rebecca and notified Rebecca that he would be removing all of Lorraine's personal property from the home. Arts asked Rebecca "not [to] remove any further personal property from inside or outside" the home. Arts also stated that he was "offering a chance for you to return property that was removed without my consent." He specifically listed "[i]tems of concern" as, "but not limited to, the Shirley Temple Doll, the Blue Willow dishes, Wally's guns, [and] hunting and fishing equipment." Arts stated that Lorraine asked him to obtain some of her jewelry, and Arts informed Rebecca that he would collect her "parents' vehicle, boat, motor, snow blower, four-wheeler, shore station, ice auger, and other items that are now considered owned by Lorraine." Arts asked Rebecca to select dates for him to visit the home accompanied by the sheriff's office. Rebecca did not respond to Arts.

3

On February 5, 2015, Arts filed a notice of motion and motion "[d]irecting" Rebecca "to turn over possession [of] personal [property] belonging to Wallace and Lorraine Schmidt to George H. Arts, conservator of Lorraine Schmidt." Arts attached an affidavit describing some of the property, and the affidavit stated that the description was "without limitation." The list included: "Motor vehicle, boat, motor, snow blower, four-wheeler, shore station, ice auger, Shirley Temple Doll, Blue Willow dishes, Wallace's guns, hunting and fishing equipment, and many other items of personal property."

The motion hearing was rescheduled twice, at Rebecca's request. At the May hearing, Arts, who was represented, submitted a full list of the inventory sought by the estate, which was marked as Exhibit 1. The list included items that did not appear in the affidavit attached to the original motion, including $17,000 cash that Arts alleged was missing from Wallace and Lorraine's safe-deposit box. The district court received the exhibit without objection from Rebecca, who represented herself. Arts supported his motion with witness testimony. Rebecca cross-examined Arts's witnesses and called two witnesses, but did not offer her own testimony.

Most of the testimony concerned various items of personal property. William, son of Wallace and Lorraine, testified about the cash in the safe-deposit box, as did daughter Linda. Summarized together, their evidence established that Linda accompanied Wallace to the bank, at his request. While there, Wallace told Linda that he had $17,000 in a safe-deposit box, opened the box, and showed the cash to her. Linda testified:

> So we got, he got the box open and he held up this money. And he said to me, "Linda, here's seventeen thousand dollars, you know, in the box." And he said, "You know,

you're the only one that knows. You're the only one that knows about it are me, you and your mom."

Linda testified that her father replaced the cash and locked the box. Also, Linda testified that she did not have the key to the safe-deposit box, she never visited that bank again, and she did not know where the money was. William also testified that, to his knowledge, the money was never found. Arts testified that Rebecca was the last person to access the safe-deposit box, apparently relying on information he received from the bank. Arts testified that he "asked the bank, and they gave [him] a date that [Rebecca] was in the account."

After Arts rested, Rebecca called two witnesses, each of whom testified about Lorraine and Wallace's personal property. In her case-in-chief, Rebecca offered no evidence about the $17,000 cash. She did, however, cross-examine William regarding the $17,000 cash during Arts's case-in-chief. [3]

In closing arguments, Arts characterized his motion as a replevin action. Arts noted that the $17,000 cash had not been included in the original motion, but argued "[t]hat matter has essentially been litigated" without an objection from Rebecca. Arts asked the district court to amend his motion to include the $17,000 cash. He also noted that Exhibit 3, a medical assistance application signed by Rebecca, identified "virtually all of the [personal] property that we're talking about including the automobile, the Arctic Cat, a fourteen-foot fishing boat with an eight horsepower motor" as property of Wallace and Lorraine in March

---

[3]  On appeal, Arts states that Rebecca asked her sister, Christine, about the money in the safe-deposit box. Although the record is a little unclear, this appears incorrect. At the point cited by Arts, William is testifying and, for reasons that are not clear from the record, Christine interjected an answer. Arts attributes the testimony to Christine, but she was never called as a witness.

2011. Arts argued that the evidence "shows that [Rebecca] was in a position to take possession of [the personal property]." In closing, Rebecca discussed her parents' will and their intent to leave their personal property with her, but she did not discuss the $17,000 cash.

On June 17, 2015, the district court issued an order granting Arts's motion, ordering Rebecca to return the personal property as well as the $17,000 cash. The district court did not expressly address Arts's motion to amend but implicitly granted it by including in its findings and order the additional items of personal property and $17,000 cash that were identified in Exhibit 1.

On July 16, 2015, Rebecca, through counsel, filed a motion for a new trial, attaching an affidavit in which she averred that she "underst[ood] now that representing [herself] was a mistake." She explained that she did not understand how to present evidence or that she should have testified. She attested that she had met with an attorney to discuss Arts's motion in February. Rebecca further attested that if she "had known the full extent of the materials [Arts] was seeking [she] would have had an attorney represent [her] at the hearing" and that she "did not know to object at the start of the hearing when Mr. Arts presented to the court a list [she] had never seen before that contained items not referred to in his motion."

In her affidavit, Rebecca denied taking the $17,000 cash from the safe-deposit box that she described as "shared" with her parents. Rebecca explained that she kept her

emergency cash in the safe-deposit box, along with her father's money. Rebecca's affidavit identified and attached "the access records" for the safe-deposit box.[4]

Rebecca argued at the district court that a new trial was appropriate under six subdivisions of the new-trial rule. She argued that an "irregularity occurred" under rule 59.01(a) because "Arts provided notice concerning a very modest list of property, then added $17,000.00 in cash and a considerable amount of valuable property at the hearing with no notice to [her] or any other party." Among other things, Rebecca argued that the same action constitutes party misconduct under rule 59.01(b). Rebecca also argued that if all items had been listed properly in the pleadings, she would have hired an attorney because it would have been clear that the stakes were higher than they appeared in the original pleadings.

On August 31, 2015, the district court heard Rebecca's motion and later denied it in a written order. The district court noted that issues not raised by the pleadings can be tried by express or implied consent and that pro se litigants are generally held to the same standard as attorneys. The district court found that Rebecca had notice that Arts sought the return of Lorraine's personal property from the notice of motion, motion, and affidavit, which specifically identified many items. Additional items were identified at the hearing. The district court also found that Rebecca did not express surprise at the additional items or

---

[4] The bank record indicated that Wallace last accessed the safe-deposit box on May 25, 2010, Rebecca accessed the box on November 23, 2010 and February 23, 2011, and the conservator "drilled" into the box on December 9, 2012 and it was "empty." Rebecca's affidavit averred that "[w]hen [she] accessed the box for the last time, "[she] took out [her] property and [her] father's" and "[she] did not see any cash" in [her] father's "material."

request a continuance or opportunity to consult with an attorney. Finally, the district court found that Rebecca "made a calculated assessment that based on the pleadings she did not need to hire an attorney," and that she "relied on her self-representation and clearly articulated to the Court [that] she thought her cross examination was enough to prove her case." Rebecca appeals.

## DECISION

Trial courts should grant motions for a new trial cautiously, sparingly, and "only in the furtherance of substantial justice." *Leuba v. Bailey*, 251 Minn. 193, 193, 88 N.W.2d 73, 74 (1957). Rule 59.01 provides seven grounds for a new-trial motion, including "(a) [i]rregularity in the proceedings of the court, . . . or prevailing party, or any order or abuse of discretion, whereby the moving party was deprived of a fair trial; (b) [m]isconduct of the jury or prevailing party;" and "(g) [t]he verdict, decision, or report is not justified by the evidence, or is contrary to law." Minn. R. Civ. P. 59.01. It is not enough for a moving party to establish that one of the grounds for a new trial exists; she must also demonstrate that she was prejudiced by the district court's ruling. *Torchwood Properties, LLC v. McKinnon*, 784 N.W.2d 416, 419 (Minn. App. 2010). Prejudice is "[t]he primary consideration in determining whether to grant a new trial." *Wild v. Rarig*, 302 Minn. 419, 433, 234 N.W.2d 775, 786 (1975). "An error is prejudicial if it might reasonably have changed the result." *Torchwood Properties*, 784 N.W.2d at 419 (quotation omitted). We review the denial of a motion for a new trial for abuse of discretion. *Frazier v. Burlington N. Santa Fe Corp.,* 811 N.W.2d 618, 629 (Minn. 2012).

Rebecca argues that the district court abused its discretion by denying her motion for a new trial.[5] Rebecca argues that she "was not given adequate notice of issues considered by the trial court that were not raised in Respondent Arts's motion."[6] Rebecca specifically challenges the order directing her to return $17,000 in cash as well as some additional items of personal property. Because she does not specify which items of personal property she is challenging, we will address the items added via Exhibit 1 on the day of trial. In sum, Rebecca makes three arguments in support of her position: (1) Arts failed to give her proper notice that he would litigate return of the $17,000 cash and the additional personal-property items added in Exhibit 1, (2) Rebecca did not litigate these items by consent, and (3) the district court failed to reasonably accommodate her to ensure fair proceedings while she appeared pro se. We will discuss each argument in turn.

First, we consider whether the district court correctly determined that Rebecca had notice of and consented to litigate the additional items of personal property. Parties are

---

[5] The parties and the district court appear to assume that the August 31 motion hearing was a trial to which rule 59.02 applies. Because the question of whether that hearing did, in fact, constitute a trial was not briefed by either party, it is not properly before this court and we decline to address it. *See Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to address an inadequately-briefed issue); *Brodsky v. Brodsky*, 733 N.W.2d 471, 479 (Minn. App. 2007) (applying *Wintz*). We note that generally, if a trial has not occurred, then a motion for a new trial is not appropriate and a new trial cannot be authorized. *See Parson v. Argue*, 344 N.W.2d 431, 432 (Minn. App. 1984) (noting that, if a trial did not occur, "a motion for a new trial is an anomaly" and the denial of a motion for a new trial is not appealable).

[6] Although Rebecca does not specify on appeal the grounds on which she relies, she argued at the district court that a new trial was appropriate under six subdivisions of the new-trial rule. All six, however, are based on a combination of Arts's failure to list the $17,000 in cash in his initial motion.

required to give reasonable notice of *issues* to be litigated. *Folk v. Home Mut. Ins. Co.*, 336 N.W.2d 265, 267 (Minn. 1983). In this case, the *issue* was return of Lorraine's personal property to the conservator; Rebecca had full notice of this general issue from Arts's original notice of motion and motion. While it is not clear that adding specific personal-property items added new issues, we will procced on that assumption, without deciding how narrowly "new issue" is construed.

When issues not contained in the original pleadings are actually tried with the express or implied consent of both parties, rule 15.02 provides that the new issues "shall be treated in all respects as if they had been raised in the pleadings." Minn. R. Civ. P. 15.02. "Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment." *Id.* Rule 15.02 also provides that the district court "may allow the pleadings to be amended and shall do so freely" when the standards of the rule are met. *Id.* Notably, when issues are tried by consent, rule 15.02 provides that failure to amend "does not affect the result." *Id.*

In this case, whether the district court clearly erred in determining that Rebecca consented is the primary issue on appeal. Specifically, the focus is on Rebecca's implied consent because she did not expressly consent. The considerations relevant to determining implied consent are discussed in *Roberge v. Cambridge Coop. Creamery Co.*, 243 Minn. 230, 235, 67 N.W.2d 400, 404 (1954). "Consent is commonly implied either where the party fails to object to evidence outside the issues raised by the pleadings or where he puts

in his own evidence relating to such issues." *Id.* at 234, 67 N.W.2d at 403. Consent must be determined based on the specific facts of each case. *Id.*

"Consent is not implied by mere failure to claim surprise or request a continuance." *Folk*, 336 N.W.2d at 267–68. "Litigation by consent is not to be applied artificially, but rather is to be implied where the novelty of the issues sought to be raised is reasonably apparent and the intent to try these issues is clearly indicated by failure to object or otherwise." *Roberge*, 243 Minn. at 235, 67 N.W.2d at 404. Fair notice "remains essential, and pleadings will not be deemed amended to conform to the evidence because of a supposed 'implied consent' where the circumstances were such that the other party was not put on notice that a new issue was being raised." *Hohenstein v. Goergen*, 287 Minn. 512, 514, 176 N.W.2d 749, 751–52 (1970) (quotation omitted). A district court's determination that consent exists is generally a factual finding, which is reviewed for clear error. *See Hopper v. Rech*, 375 N.W.2d 538, 543 (Minn. App. 1985) (reviewing consent finding for clear error), *review denied* (Minn. Dec. 30, 1985).

Here, Rebecca does not dispute that she had notice of the general issue for trial: return of Lorraine's personal property. Arts filed a notice of motion, motion, and affidavit in support of his request to return Lorraine's personal property, along with a list of items. At trial, Arts supported his claim for the original items and introduced evidence of $17,000 cash and additional items of personal property that were not in the original motion and affidavit. The cash and the additional personal property items are itemized in Exhibit 1, which Arts offered during the trial and was received by the district court without any objection from Rebecca.

11

Turning first to the additional personal property items, the district court correctly concluded that the additional items of personal property listed in Exhibit 1 were tried with notice and by implied consent for three reasons. First, the original motion and affidavit put Rebecca on notice that Arts was asking her to return Lorraine's personal property and described some items but did so "without limitation." Second, the original motion and affidavit expressly stated that Arts sought "other items of personal property." Third, Arts listed the additional items specifically in Exhibit 1, which was received with no objection from Rebecca, who then proceeded to cross-examine witnesses on the items and offer witness testimony of her own.

Turning next to whether Rebecca had notice of and impliedly consented to litigate the return of $17,000 in cash, our analysis is largely the same as with the items of personal property. Arts listed the $17,000 cash on Exhibit 1, which was received with no objection by Rebecca. Additionally, the district court found that Rebecca's conduct at trial implied her consent to litigate return of the cash because she did not object, raise any concerns during the hearing, express surprise, or ask for additional time. Moreover, Rebecca elicited testimony on cross-examination about the $17,000.

In sum, the district court's finding that Rebecca had notice and impliedly consented is fully supported by the trial transcript and is not clearly erroneous. We also note that, even though rule 15.02 does not require an amendment of the pleadings, Arts sought amendment during trial, which the district court implicitly granted after no objection by Rebecca. *See, e.g.*, *Tjernlund v. Kadric*, 425 N.W.2d 292, 297 (Minn. App. 1988), *review*

12

*denied* (Minn. Aug. 24, 1988) (affirming district court's decision to allow amendment of pleadings to include new issue raised for the first time on the second day of trial).

Last, we turn to whether the district court failed to grant Rebecca appropriate accommodation as a pro se party. Rebecca anchors her argument on the duty of a trial court to "ensure fairness to a pro se litigant by allowing reasonable accommodation so long as there is no prejudice to the adverse party." *Kasson State Bank v. Haugen*, 410 N.W.2d 392, 395 (Minn. App. 1987); *see Black v. Rimmer*, 700 N.W.2d 521, 527 (Minn. App. 2005) (noting that "some accommodations may be made for pro se litigants" (quotation omitted)). Under Minnesota caselaw, "pro se litigants are generally held to the same standards as attorneys and must comply with court rules." *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001).

After a thorough review of the trial transcript, we conclude that the trial judge made significant efforts to accommodate Rebecca as a pro se party. Among other things, the judge directly asked Rebecca whether she wanted to proceed without counsel and informed her that the judge could not give her legal advice, yet the judge offered some procedural guidance, such as explaining that Rebecca's questions to the witnesses were not testimony. The trial judge also overruled some of Arts's objections to Rebecca's questions and sustained at least one of Rebecca's objections.

In closing, we agree with the district court that Rebecca "relied on her self-representation and clearly articulated to the Court [that] she thought her cross examination was enough to prove her case." At the end of the hearing, Rebecca declined to testify when

13

prompted by the district court, explaining that "I think that through my questions, I have created some sort of doubt into some of the things that [William] and [Linda] said."

Because Arts gave Rebecca notice that the issue for trial was the return of Lorraine's personal property, Rebecca's conduct during trial evidenced her consent to try additional items of personal property along with the $17,000 in cash, and Arts sought to amend his pleadings, which the district court implicitly granted, we conclude that the district court did not clearly err in finding that Rebecca had notice and impliedly consented to litigate the additional personal property items and the cash. Rebecca cannot establish any of the grounds justifying a new trial in rule 59.01, therefore, the district court did not abuse its discretion in denying Rebecca's motion for a new trial.

**Affirmed.**